1

2

3

4                   IN THE UNITED STATES DISTRICT COURT

5                FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN M. HAGAN, individually and as ) Case No. 09-4618 SC
     Successor-in-Interest of the       )
8    ESTATE OF LORI HAGAN,              ) ORDER GRANTING MOTION TO
                                        ) REMAND
9                   Plaintiff,          )
                                        )
10                                      )
             v.                         )
11                                      )
                                        )
12   CALIFORNIA PHYSICIANS' SERVICE,    )
     dba BLUE SHIELD OF CALIFORNIA, a   )
13   California Corporation, BLUE       )
     SHIELD OF CALIFORNIA LIFE AND      )
14   HEALTH INSURANCE COMPANY, a        )
     California Corporation, and DOES 1 )
15   through 100, inclusive,            )
                                        )
16                  Defendants.         )
                                        )
17   _____)

18   **I.    INTRODUCTION**

19        This suit involves a dispute between Plaintiff John M. Hagan

20   ("Hagan" or "Plaintiff") and Defendants California Physicians'

21   Service and Blue Shield of California Life and Health Insurance Co.

22   (collectively "Blue Shield" or "Defendants").  Blue Shield removed

23   this action to federal court after it discovered what it believed

24   to be a basis for federal question jurisdiction.  See Docket No. 1

25   ("Notice of Removal").  The Court is now considering Hagan's Motion

26   to Remand ("Motion").  Docket No. 12.[1]  Blue Shield has submitted

27   _____

28   [1] Hagan also requests attorney fees through an Amended Motion to
     Remand.  Docket No. 14.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    an Opposition, and Hagan has submitted a Reply.  Docket Nos. 16,

2    19.  In addition, Blue Shield has submitted a surreply, coupled

3    with an ex parte motion for permission to file this surreply.

4    Docket Nos. 20.[2]  Having considered the submissions from both

5    parties, the Court finds that remand is appropriate, and GRANTS

6    Hagan's Motion.

7

8    II   **BACKGROUND**

9        This is an insurance dispute between Hagan and Blue Shield,

10   who issued a health insurance policy that covered Hagan and his

11   wife on July 1, 2005.  See Notice of Removal Ex. F ("FAC") ¶ 14.

12   Hagan claims that his wife was diagnosed with a rare form of

13   adenocarcinoma around February of 2006.  Id. ¶ 15.  On August 23,

14   2006, Blue Shield rescinded the Hagans' coverage, claiming that

15   Hagan's wife had failed to disclose material medical history

16   information when she applied for coverage under Blue Shield's

17   policy.  Id. ¶ 16.  Hagan's wife died on May 9, 2007.  Id. ¶ 20.

18       Hagan claims that Blue Shield's practices are designed to give

19   it unfair and unreasonable opportunities to rescind coverage for

20   customers who have serious health conditions.  Id. ¶¶ 21-24.  He

21   brought suit in the Superior Court of the State of California, Lake

22   County, against Blue Shield for breach of contract, breach of the

23   duty of good faith and fair dealing, and a number of other state

24   ────────────────
     [2] Because Blue Shield filed its surreply in response to a novel
25   argument raised by Hagan in his Reply, the Court GRANTS Blue
     Sheild's Motion for Permission to File Sur-Reply Brief re
26   Plaintiff's Motion to Remand.  Hagan also filed a request for
     permission to submit a responsive surreply, Docket No. 22, but the
27   Court does not see any similar good reason for Hagan's late
     submission.  Hagan's Motion for Permission to File Sur-Surreply
28   Brief re Motion to Remand is DENIED.  Consideration of this
     submission would not have changed the outcome of this Order.

2

causes of action.  <u>See</u> <u>Compl.</u>

This matter found its way into federal court after Blue Shield discovered that businesses owned by Hagan had paid the premiums for the Blue Shield policy, as opposed to Hagan personally.  Notice of Removal ¶ 20.[3]  Blue Shield claims that the policy was therefore part of an ERISA plan, that all of Hagan's state cause of action are preempted by ERISA, and that this Court has subject matter jurisdiction over the dispute.  <u>Id.</u> ¶¶ 8-17.

Hagan is the owner of two businesses: Economy Heating, a sole proprietorship, and Economy Propane, an S corporation in which he is the sole shareholder and sole operator.  Hagan Decl. ¶ 2.[4] Around 1995, Hagan obtained a Blue Cross health insurance policy to cover his employees.  <u>See</u> Johna Decl.[5] Ex. 1 ("Def.'s Hagan Dep. Excerpts") at 367:25-368:6.  Hagan and his family were apparently covered under this policy.  <u>C.f.</u> Johna Decl. Ex. 2 ("Krebser Decl.") at 178:24-179:13.[6]  Between May and July of 2005, Hagan switched his family from the Blue Cross policy to a separate Blue Shield policy.  FAC ¶ 15.  Blue Shield concedes that the Blue Shield policy covered only Hagan and his family.  Opp'n at 5.

During the time that the Blue Shield policy was active (until August 23, 2006), each and every premium payment for the Blue Shield policy was paid by business checks from either Economy

---

[3] Plaintiff raises no objection to removal on the basis of timeliness.

[4] Hagan filed a declaration in support of the Motion to Remand. Mot. at 9.  This declaration did not have a separate docket entry.

[5] Ophir Johna ("Johna"), counsel for Blue Shield, filed a declaration in support of the Opposition.  Docket No. 18.

[6] Peter Krebser ("Krebser") was a broker who assisted Hagan in procuring his insurance policies.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Heating or Economy Propane.  Johna Decl. Ex. 6 ("Checks") at 189-203.  Hagan claims that although "some" of the policy premiums were paid by his businesses, they were kept -- or at least intended to be kept -- as a personal policy that was separate from the ERISA insurance policy that his business maintained for his employees, and they were charged -- or intended to be charged -- to his personal draw.  See Mot. at 5-6.

### III. <u>LEGAL STANDARD</u>

An action that might have originally been brought in federal court is removable to federal court.  28 U.S.C. § 1441(a).  "The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper.  The defendants bear the burden of proving the propriety of removal."  <u>Simpson v. Union Pac. R.R. Co.</u>, 282 F. Supp. 2d 1151, 1153 (N.D. Cal. 2003) (citation omitted).  Where removal depends on contested facts, the removing party must establish "by a preponderance of evidence" that removal was proper -- i.e., that there is a sufficient basis for jurisdiction.  <u>See</u> <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 403-04 (9th Cir. 1996) (discussing burden where amount in controversy was contested).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  <u>Gaus v. Miles, Inc</u>., 980 F.2d 564, 566 (9th Cir. 1992).

Courts will generally only have federal-question jurisdiction where the federal question is presented on the face of a "well-pleaded" complaint.  <u>See</u> <u>Rivet v. Regions Bank</u>, 522 U.S. 470, 475 (1998).  "Allied as an 'independent corollary' to the well-pleaded

4

**United States District Court**
For the Northern District of California

1    complaint rule is the further principle that 'a plaintiff may not

2    defeat removal by omitting to plead necessary federal questions.'"

3    Id. (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation

4    Trust for Southern Cal., 463 U.S. 1, 14 (1983)).  According to this

5    principle, a federal court may have jurisdiction "where federal law

6    completely preempts a plaintiff's state-law claim," such as where

7    claims are completely preempted by the Employee Retirement Income

8    Security Act ("ERISA"), 29 U.S.C.S. § 1001 et seq.  Id. (citing

9    Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).

10

11   **IV.   DISCUSSION**

12        **A.   Blue Shield's Objections**

13        Before moving to the substance of Hagan's Motion, the Court

14   will briefly address Blue Shield's evidentiary objections.  Docket

15   No. 17 ("Objections").  The Court does not appreciate the

16   concurrent filing of eight pages of objections separate from and in

17   addition to an opposition brief that already reaches the page limit

18   set out by the Civil Local Rules.  Civ. Local Rules 7-3(b), 7-4(b).

19   The Court OVERRULES Blue Shield's objections with respect to the

20   Hagan Declaration.  Blue Shield first argues that Hagan's

21   statements with respect to his intended use and the intended scope

22   of the policy are irrelevant.  Objections ¶¶ 1-2.  The Court simply

23   disagrees, and finds that Hagan's claims are both relevant and

24   supported by deposition testimony cited by both parties, as

25   described in more detail below.  Blue Shield also challenges

26   several of Hagan's statements based upon the "best evidence rule,"

27   even though the statements to which Blue Shield objects do not

28   purport to describe the "content of a writing, recording or

photograph . . . ."  Id. ¶¶ 3-4; Fed. R. Evid. 1002.  Blue Shield apparently misunderstands the application of this rule.  If a declarant has firsthand knowledge of a fact, this rule does not prevent the declarant from testifying to that fact, simply because there exists a separate document that also speaks to that fact.

The Court SUSTAINS Blue Shield's objections to the October 28 Declaration of Scott Glovsky ("First Glovsky Decl.").[7]  The Court finds the contents of the declaration to be irrelevant to the factual and legal issues involved in the Motion.  Similarly, because the December 17 Declaration of Scott Glovsky ("Second Glovsky Decl.")[8] only speaks to issues related to attorney fees, and because the Court does not find an award of attorney fees to be appropriate, it SUSTAINS Blue Shield's objections to the Second Glovsky Declaration.

**B.**     **Whether the Blue Shield Policy Falls Under ERISA**

"ERISA contains one of the broadest preemption clauses ever enacted by Congress."  Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990).  It preempts any claim that "relates to" a covered employee benefit plan, 29 U.S.C. § 1144(a), such that "it has a connection with or reference to such a plan."  Shaw v. Delta Air Lines, 463 U.S. 85, 96-97 (1983).  "[A] common-law cause of action premised on the existence of an ERISA plan" will be preempted by ERISA.  See Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 324 (1997).  Of course,

---

[7] Scott Glovsky ("Glovsky"), counsel for Hagan, filed a declaration in support of the Motion to Remand.  Mot. at 10-11.  This declaration did not have a separate docket entry.

[8] Glovsky also filed a declaration in support of his Amended Motion.  Docket No. 15.

6

**United States District Court**
For the Northern District of California

1  ERISA preemption is only relevant if Blue Shield can prove that the

2  Blue Shield policy was in fact part of an ERISA plan.

3      Under 29 U.S.C. § 1002(1), an "employee welfare benefit plan"

4  includes:

5          (1) a "plan, fund or program" (2) established or
           maintained (3) by an employer or by an employee
6          organization, or by both, (4) for the purpose of
           providing   medical,  surgical,  hospital  care,
7          sickness,    accident,   disability,   death,
           unemployment or vacation benefits, apprenticeship
8          or other training programs, day care centers,
           scholarship funds, prepaid legal services or
9          severance benefits (5) to the participants or
           their beneficiaries.

10

11  Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir.

12  1988).

13      At the heart of this dispute is whether the Blue Shield policy

14  was part of a plan established for the benefit of participants or

15  their beneficiaries.[9]  This is because "[a]n ERISA employee benefit

16  plan must have 'participants' which are present or former employees

17  of an employer."  Watson v. Proctor, 161 F.3d 593, 596 (9th Cir.

18  1998) (citing 29 U.S.C. § 1002(6)).  It is undisputed that the only

19  people covered by the Blue Shield policy were Hagan and his family,

20  Hagan Decl. ¶ 3, and "an individual and his or her spouse shall not

21  ───────────────

22  [9] Hagan also claims that because the Blue Shield policy was
     procured in connection with a Health Savings Account ("HSA"), it is
23   not subject to ERISA.  Reply at 1-8.  The Court is unpersuaded.
     The only substantive, on-point law that Hagan cites explicitly
24   states that, even though HSAs are often not covered by ERISA, the
     status of an HSA does not affect the ERISA status of employer-
25   sponsored high deductible health plans related to that HSA.  See
     Dept. of Labor Field Assistance Bulletin 2004-1.  This Court
26   understands HSAs and employer-sponsored insurance policies to be
     two separate things, the latter of which may fall under ERISA even
27   when the former does not.  Hagan's emphatic reliance upon this
     argument is therefore unfounded.  The Court declines Hagan's
28   invitation to sanction Blue Shield for failing to brief this issue
     in its Opposition.

**United States District Court**
For the Northern District of California

be deemed to be employees with respect to a trade or business,
whether incorporated or unincorporated, which is wholly owned by
the individual and his or her spouse . . . ."  29 C.F.R. § 2510.3-
3(c)(1); <u>Watson</u>, 161 F.3d at 596-97.  Consequently, if the Blue
Shield policy is construed as a stand-alone "plan," then it cannot
be an ERISA plan.  This would mean that ERISA cannot preempt
Hagan's claims against Blue Shield, and this Court has no
jurisdiction over this dispute.

Blue Shield points to the existence of the Blue Cross policy,
which covered Hagan and his family before they established the Blue
Shield policy, and which admittedly does qualify as an ERISA plan
because it covers Hagan's employees.  <u>See</u> Opp'n at 12, 18-20; Mot.
at 3.  Blue Shield argues that both policies in fact make up part
of the same "plan," which provided coverage for "employees" when
taken as a whole, and which is therefore governed by ERISA.  Blue
Shield is correct to point out that the mere fact that an
owner/shareholder has an individual policy does not render that
policy a separate "plan" for ERISA purposes, so long as it was part
of or derived from a larger ERISA "plan."  <u>See</u>, <u>e.g.</u>, <u>Peterson v.</u>
<u>American Life & Health Insurance Co.</u>, 48 F.3d 404, 407-08 (9th Cir.
1995); <u>Harper v. Am. Chambers Life Ins. Co.</u>, 898 F.2d 1432, 1434
(9th Cir. 1990).  If the Blue Shield policy is part of a broader
"plan" that also includes the Blue Cross policy, then Hagan's
claims are preempted and this Court has jurisdiction.

In <u>Peterson</u>, a partnership purchased a short-term group policy
that covered the business' two partners as well as their only
employee; this policy was intended to provide coverage only while
the business tried to secure a long-term policy under a different

insurer.  48 F.3d at 406.  When the long-term policy was secured, one partner and the employee shifted to the new policy, while the other partner, Peterson, was not accepted by the new carrier and remained on the first policy.  Id.  Peterson then required medical treatment, was denied coverage, and brought state law claims against his insurance carrier, which invoked ERISA preemption.  Id. at 406-07.  The Ninth Circuit panel held that "the fact that the . . . policy covered only a . . . partner at the time of Peterson's surgery is not determinative."  Id. at 407.  The business "continued to provide insurance to at least one non-partner employee, albeit" under a different policy.  Id. at 407-08.  It stated that the business:

> not only paid its partners' and employees' insurance premiums but also played an active role in the administration of the coverage, including choosing the insurance, adding and deleting employees and partners from various policies, contacting insurance companies for employees and partners, and distributing information relevant to the coverage.

Id. at 408.  Finally, the Court found it pertinent that the policy "originally covered a non-partner employee" and was effectively "derived from" an ERISA plan.  Id.  It concluded that Peterson's policy "was just one component of [the business'] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan."  Id. at 407.

In contrast, Hagan likens this case to LaVenture v. The Prudential Ins. Co, of Am., in which a panel for the Ninth Circuit held that a disability insurance policy, is "not converted into an ERISA plan merely because a company offers its employees unrelated health insurance coverage."  237 F.3d 1042, 1044-45 (9th Cir.

**United States District Court**
For the Northern District of California

2001).  The plaintiff, LaVenture, was the sole shareholder of a company.  Id. at 1043.  She had purchased, for herself and her husband, disability insurance that had been solicited to the company, and she later purchased health insurance (but not disability insurance) for a new employee.  Id. at 1044.  The panel contrasted the facts before it with those in Peterson, noting that the disability policy in question "did not originate as part of an ERISA plan . . . ."  Id. at 1045-46.  It stated that the disability policy "was not an ERISA plan because all of the benefits flow to the owner," and there was "no evidence to establish that the disability policy and health plan were intertwined so as to constitute an overall benefit plan."  Id. at 1047.

Considering all of the facts raised by both Hagan and Blue Shield, the Court concludes that the Blue Shield policy was a separate plan, more akin to the disability policy in LaVenture than the health insurance policy in Peterson.  Even though both of these policies included health insurance, there is no evidence that they were intertwined -- no employees were ever covered by the Blue Shield policy, and there is no evidence that coverage was ever offered to them.  Hagan Decl. ¶ 3.  Unlike in Peterson, while the Blue Shield policy existed, every owner (i.e., Hagan) was covered only by the Blue Shield policy, and no owner was covered by the Blue Cross policy.  Unlike in Peterson, the individual Blue Shield policy was never "derived" from a group policy that was unequivocally part of an ERISA plan.  The Blue Shield policy was created roughly ten years after the Blue Cross policy, and the former was independent from the latter.  There is no indication that Hagan's businesses, as opposed to Hagan acting in his personal

capacity, made any administrative decisions or exercised any power over the Blue Shield policy.

In reaching its conclusion that the policy was part of a single ERISA plan, the panel in Peterson noted the fact that the partnership paid for the policy.  48 F.3d at 408.  Blue Shield therefore makes much of the fact that the premiums for the Blue Shield policy were paid from the accounts of Hagan's businesses, rather than from a personal checking account.  See Checks at 189-203.  These include payments from the Economy Propane account, which, unlike the Economy Heating account, Hagan does not claim to have ever used as a "personal" account.  See Checks at 192-93, 195-97, 199-201; Third Glovsky Decl.[10] Ex. B ("Pl.'s Hagan Dep. Excerpts") at 150:16-153:16.  It cannot be reasonably disputed that Hagan's businesses accounted for the premiums as business expenses, rather than personal expenses or disbursements, and Hagan even accounted for them as expenses on the business' tax statements for 2005 and 2006.[11]  Johna Decl. Exs. 7, 8, 9, 10 (collectively, "Account Transaction Details"); id. Exs. 12 ("2005 Form 1040"), 13 ("2006 Form 1040"), 14 ("2005 Form 1120S"), 15 ("2006 Form 1120S").

This Court nevertheless finds that the payment of the premiums

---

[10] Glovsky attached this declaration in support of the Motion to the Reply.  It does not have a separate docket entry.

[11] Blue Shield claims that Hagan should be estopped from claiming that the premiums were not paid by his businesses.  Opp'n at 16-18.  Although Hagan claims that most of the premiums were paid for from his "personal checking," a quick inspection of the checks themselves reveals that this is incorrect -- most premiums were paid by Economy Propane.  See Checks at 189-203.  However, the issue is not simply whether the businesses paid for the premiums, but rather whether the Blue Shield policy was part of the same "plan" as the Blue Cross policy.  Determining the entity that ultimately paid the premium informs, but does not decide, this question.

United States District Court
For the Northern District of California

1   should not be determinative, particularly given the peculiar facts

2   of this case.  Hagan was the sole proprietor and owner of his

3   businesses, and he regularly paid personal expenses and made

4   personal draws from Economy Heating's account.  Pl.'s Hagan Dep.

5   Excerpts at 150:16-153:16.  John Robertson ("Robertson"), Hagan's

6   accountant, testified in deposition that he had received

7   instructions from Hagan which he understood to require him to treat

8   all of the policy payments as distributions to Hagan, rather than

9   business expenses.[12]  Third Glovsky Decl. Ex. A ("Pl.'s Robertson

10  Dep. Excerpts") at 220:16-221:21.  Robertson states that the

11  premiums were treated as a business expense only because he "must

12  not have communicated properly to the accounting department" the

13  requirement that the Blue Shield policy be treated as a personal

14  expense.  Id. at 220:16-24.  Robertson incorrectly believed that

15  the policies were being treated "correctly" (i.e., separately) in

16  2005 and 2006.  Id. at 225:6-13.  While it is true that Hagan's

17  businesses paid for the premiums, Robertson's testimony provides

18  clear evidence of an attempt (albeit a failed attempt) to keep the

19  two insurance policies separate, and to treat them differently.

20  This is further evidence that the policies were never intended to

21

22

23  _____

24  [12] Blue Shield claims that Hagan never gave any such instructions.
    Opp'n at 15.  After examining the excerpts from Robertson's
    deposition that Blue Shield cited to support this claim, the Court
25  disagrees.  Both of the excerpts cited by Blue Shield appear to
    speak to later time periods, see Johna Decl. Ex. 4 ("Def.'s
26  Robertson Dep. Excerpts") at 105:3-9, 174:6-13, and this point is
    more clearly addressed by Robertson's testimony that, "at that
27  point in time," Robertson's "expectation back then would have been
    that we would have treated all the individual policy payments as a
28  distribution . . . ."  See Pl.'s Robertson Dep. Excerpts at 220:16-
    221:21.

be a part of the same overarching ERISA plan.[13]

Blue Shield also points out that, after the Blue Shield policy was rescinded, Hagan moved his family back onto the Blue Cross policy.  Opp'n at 7-8.[14]  This does not undermine the independent nature of the Blue Shield plan.  Notably, shortly after Hagan joined the Blue Cross policy, Hagan's accountants apparently realized their accounting mistake and began treating payments for Hagan under the Blue Cross policy as a separate draw, distinct from the payments made for other employees, just as the Blue Shield policy was supposed to have been treated.[15]  Pl.'s Robertson Dep. Excerpts at 224:3-225:4.  This fact reinforces Robertson's testimony that the businesses had always intended to treat the Blue Shield policy separately, and it supports the Court's conclusion that the policies were not so "intertwined . . . as to constitute one overall benefit plan."  LaVenture, 237 F.3d 1047.

The Court finds that Blue Shield has failed to demonstrate by a preponderance of the evidence that the Blue Shield policy could be considered, with the Blue Cross policy, to constitute a single ERISA plan.  The Court believes that the Blue Shield policy was

[13] The Court does not believe that the evidence suggests that Hagan is attempting to "rewrite history" to make it look as though his businesses never paid for the Blue Shield policy; rather, the testimony of Robertson suggests that it was an honest error which they simply had not noticed until this suit arose, at which point Robertson (apparently on his own initiative) attempted to correct the prior tax statements.  See Pl.'s Robertson Dep. Excerpts at 229:4-24.

[14] The Court assumes, arguendo, that this is true, although it notes that the deposition excerpts that Blue Shield cites for support appear to address separate points.

[15] Blue Shield does not discuss how payment for Hagan's Blue Cross policy was treated prior to his enrollment under the Blue Shield policy.

**United States District Court**
For the Northern District of California

1   intended as a separate policy made especially for the owner and

2   shareholder of Economy Heating and Economy Propane, together with

3   his family.  Consequently, the Blue Shield policy had no employee

4   participants and cannot be governed by ERISA.

5        **C.   <u>Attorney Fees</u>**

6        Under 28 U.S.C. 1447(c), "[a]n order remanding the case may

7   require payment of just costs and any actual expenses, including

8   attorney fees, incurred as a result of the removal."  A district

9   court has wide discretion in assessing fees pursuant to section

10  1447(c).  <u>Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson</u>, 201

11  F.3d 1212, 1215 (9th Cir. 2000).  Absent unusual circumstances,

12  attorney's fees should not be awarded when the removing party has

13  an objectively reasonable basis for removal.  <u>See</u> <u>Martin v.</u>

14  <u>Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005); <u>Patel v. Del</u>

15  <u>Taco, Inc.</u>, 446 F.3d 996, 999 (9th Cir. 2006).  The Court believes

16  that Blue Shield's claim that the Blue Shield policy and the Blue

17  Cross policy constituted a single ERISA plan is incorrect, but not

18  unreasonable -- particularly in light of the incorrect accounting

19  treatment that the Blue Shield policy received, and the fact that

20  the explanation for this treatment was only elicited after removal.

21  Any "unusual circumstances" in this case weigh against, and not

22  for, an award of attorney fees.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

V.    <u>CONCLUSION</u>

        For the reasons stated above, Hagan's claims are not preempted by ERISA, and this Court lacks subject matter jurisdiction over this lawsuit.   The Court hereby GRANTS Plaintiff John M. Hagan's Motion to Remand.   This matter is remanded to the Superior Court of California, in and for the County of Lake.   The request for an award of attorney fees is DENIED.


        IT IS SO ORDERED.


        Dated: February 4, 2009

                                        _____
                                        UNITED STATES DISTRICT JUDGE

United States **District Court**
For the Northern District of California

15